UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EVA LISETT RIVERA,

                Plaintiff,

                              Civil No. 13-3803(NLH)

   v.

                              **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 SOUTH WHITE HORSE PIKE
AUDUBON, NJ 08106

   *On behalf of Plaintiff*

ELIZABETH ROTHSTEIN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
26 FEDERAL PLAZA
ROOM 3904
NEW YORK, NY 10278

   *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI

of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, September 19, 2007.  For the reasons stated below, this Court will reverse the decision and remand the matter for further proceedings.

I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits, claiming that as of September 19, 2007, her generalized anxiety disorder/post-traumatic stress disorder, major depressive disorder, and severe gastrointestinal disorder have left her completely disabled and unable to work.  Prior to that date, Plaintiff worked as a home health aide.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled.  Plaintiff appealed the decision.  The Appeals Council reviewed the ALJ's decision and remanded the matter to the same ALJ for further consideration.  The ALJ again determined that Plaintiff was not disabled, and the Appeals Council upheld the ALJ's second decision rendering it final.  Plaintiff now seeks this Court's review of the ALJ's second denial of her application for benefits.

2

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co. V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the

4

> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x. 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

    1.    If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

    2.    If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

    3.    If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix

>    1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."
>
> 4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."
>
> 5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  <u>See</u> <u>id.</u>  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."

7

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C. Analysis

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One).  The ALJ next found that Plaintiff's mood disorder and gastrointestinal disorder were severe (Step Two).  The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three).  At Step Four, the ALJ found that even though Plaintiff was not capable of performing her previous job as a home health aide, Plaintiff had the residual functional capacity (RFC) to perform other jobs at the light work level, such as an assembler, which are in significant numbers in the national economy (Step Five).

Plaintiff argues that the ALJ erred in several ways, including by not making the proper Step Two analysis of her generalized anxiety disorder/PTSD disorder and by not supporting her finding that Plaintiff could work an 8-hour day, 40-hours a week job.  In addition to those and other alleged substantive errors, Plaintiff argues that the ALJ refused to order the enforcement of Plaintiff's January 2010 subpoena for her mental health treating physician records and never ruled on Plaintiff's

8

post-remand, September 2011 renewed request to enforce the subpoena.  Plaintiff argues that because the record before the ALJ did not include over three and a half years' worth of psychotherapy session notes, the ALJ did not have the requisite "substantial evidence" to make a proper determination as to her impairments.

The Court finds that the unenforced subpoenas and the resulting absence of the treatment records to be a dispositive issue for the purposes of Plaintiff's appeal.  When explaining her assessment of Plaintiff's impairments, the ALJ considered two clinical reports and one questionnaire of Plaintiff's treating physician, Dr. Nall.  Dr. Nall completed the first clinical report on May 21, 2008, and assigned Plaintiff a Global Assessment Functioning ("GAF") score of 45, which is an indication of serious mental symptoms or functional limitations.[1]

---

[1] See Gulin v. Commissioner, 2014 WL 1466488, 4 n.2 (D.N.J. 2014) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) ("DSM–IV–TR")) (explaining that the GAF Scale ranges from zero to one-hundred. An individual's "GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range." "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." "In most instances, ratings on the GAF Scale should be for the current period (i.e., the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care.").

The second clinical report was completed by Dr. Nall in September 2009, and Dr. Nall assessed Plaintiff as having a GAF score of 54,[2] which is moderate mental symptoms or functional limitations.  Dr. Nall filled out a questionnaire in September 2011, where she indicated that Plaintiff's impairments resulted in marked limitations in several specific areas of mental functioning, and that such limitations precluded Plaintiff's ability to work.

In addition to those three reports of Dr. Nall, the ALJ also considered a report and questionnaire from state consultative psychologist Dr. Laviolette in March 2008.  Dr. Laviolette assessed Plaintiff's GAF score to be 57, which indicates moderate limitations.  Dr. Laviolette's response to the questionnaire was the same as Dr. Nall's – that Plaintiff had marked limitations in mental functioning which precluded Plaintiff's ability to work.

The ALJ rejected Dr. Nall's and Dr. Laviolette's assessments of Plaintiff.  In discounting the two doctors' assessments, the ALJ stated that the questionnaires were

---

[2] A GAF rating of fifty-one to sixty indicates that an individual has "[m]oderate symptoms," e.g., "flat affect and circumstantial speech, [or] occasional panic attacks," or "moderate difficulty in social, occupational, or school functioning." DSM–IV–TR 34.

10

inconsistent with the assigned GAF scores, and that Dr. Laviolette's single encounter with Plaintiff was based on Plaintiff's subjective complaints, rather than on her mental health treatment records.  The ALJ rejected the assessment of Dr. Nall as "inconsistent with the medical evidence in the record."  (R. at 16.)  The ALJ therefore concluded that Plaintiff has "no indication of serious health issues." (Id.)

After a review of the record before us, we are unable to discern the underlying medical evidence relied upon by the ALJ.  Plaintiff treated with Dr. Nall at least once a month from early 2008 through the date of the second hearing on September 30, 2011.  The notes from those three years of treatment were absent from the record and were therefore not considered by the ALJ.  The only medical evidence of Plaintiff's mental impairments that the ALJ considered were three reports and two questionnaires.  These five documents indicated that Plaintiff suffered from serious to moderate mental and social limitations, but the ALJ rejected those reports in favor of unspecified other "medical evidence."

An ALJ is not required to blindly follow a treating physician's conclusions, Brownawell v. Commissioner Of Social Security, 554 F.3d 352, 355 (3d Cir. 2008), and "[i]n evaluating

11

medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another," Diaz v. Commissioner, 577 F.3d 500, 505-06 (3d Cir. 2009).  An ALJ may not, however, substitute her own lay opinion for the opinion of the treating physician, Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000), and an ALJ must specifically point to some medical evidence in the record that supports her conclusions, Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) (remanding for a more comprehensive analysis of the evidence where the ALJ discussed only four diagnostic tests and five treatment notes out of 115 pages of relevant medical evidence).

A fundamental problem in this case is the apparent refusal of the treating physician's facility to produce Plaintiff's treatment notes.  The ALJ was empowered under the governing regulations to issue a subpoena at Plaintiff's request, and then assist in the enforcement of that subpoena.[3]  In a case such as

---

[3] See 20 C.F.R. § 404.950(d) ("(1) When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing."); Social Security Hearings, Appeals, and Litigation Law Manual ("HALLEX"), I-2-5-78, Use of Subpoenas — General ("The ALJ must issue a subpoena on a claimant's timely request if the claimant shows that an individual has evidence or can offer testimony that the claimant

12

this one, where a significant volume of relevant medical records are missing from the record, and where the ALJ rejects the medical evidence that is contained in the record, the ALJ should make the effort to assist the claimant in obtaining the appropriate medical records.[4]

Here, the ALJ rejected the record medical evidence that supports a finding that Plaintiff had marked functional limitations without a corresponding reference to other medical

---

cannot obtain without the subpoena, the ALJ determines that the evidence or testimony is reasonably necessary for the full presentation of the case, and the ALJ has exhausted other means of obtaining this evidence or testimony."); HALLEX, I-2-5-82, Noncompliance With a Subpoena ("If an individual refuses or fails to comply with a subpoena, the ALJ must consider any changes in the situation since the subpoena was first issued and again determine whether the evidence or facts requested are reasonably necessary for the full presentation of the case. If so, the ALJ will prepare a memorandum to the OGC Regional Chief Counsel requesting enforcement of the subpoena, and transmit the memorandum to the OGC Regional Chief Counsel through the HOCALJ who shall forward it to the RCALJ."); id. ("Persistent refusal of any subpoenaed individual to appear as a witness at a hearing or provide requested documents or facts may result in contempt proceedings if the Commissioner obtains an order from a Federal district court.").

[4] The Court does not question, and takes no position on, the Commissioner's contention that the ALJ's refusal to effect the treatment source's compliance with the subpoena for Plaintiff's medical records cannot constitute reversible error as a matter of law. This Court's decision is based on the lack of record evidence to support the ALJ's denial of benefits. If the ALJ had pointed to and adequately discussed medical evidence that adequately supported her decision even in the absence of the treatment notes, the subpoena issue would be irrelevant.

13

sufficient to support the contrary conclusion.  For that reason, the matter will be remanded for further proceedings.  On remand, the supplementation of the record with the treatment notes will provide a more complete record on which to base a ruling whether or not the ALJ ultimately reaches the same conclusion as to disability.

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled is not supported by substantial evidence.  Accordingly, the decision of the ALJ is reversed, and remanded for further consideration consistent with this Opinion.  An accompanying Order will be issued.


Date:   December 16, 2014           s/ Noel L. Hillman
                                    NOEL L. HILLMAN, U.S.D.J.

14